IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SLOAN COMPANY, | : | |
|     Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| LIBERTY MUTUAL | : | |
| INSURANCE CO., | : | No. 07-5325 |
|     Defendant. | : | |

<u>MEMORANDUM</u>

**Schiller, J.**                                                                                                                                  **August 25, 2009**

Plaintiff Sloan & Company brought this action against Defendant Liberty Mutual Insurance Company, alleging breach of contract of a surety bond. Currently before the Court are the parties' cross-motions for summary judgment, upon which the Court held oral argument on August 21, 2009. For the reasons that follow, Plaintiff's motion is granted in part and denied in part, Defendant's motion is granted in part and denied in part, and judgment in the amount of $785,067.00 is entered in Plaintiff's favor.

**I.      BACKGROUND**

On May 7, 2004, Shoemaker Construction Company (the "Contractor") entered into a contract with Isle of Capri Associates, LP (the "Owner") for a $90.7 million construction project known as Waterfront Square Condominiums & Spa, at Piers 36-39 North, Philadelphia, Pennsylvania (the "Project"). (Mem. of Law in Supp. of Mot. by Pl. to Lift Stay and Enter Summ. J. against Def. [Pl.'s Summ. J. Mem.] at 1; Mem. of Law in Supp. of Def.'s Cross-Motion for Summ. J. and in Opp'n to Pl.'s Mot. for Summ. J. [Def.'s Summ. J. Mem.] at 3.) Liberty Mutual issued a payment bond (the "Surety Bond") on September 9, 2004 to Shoemaker for the construction of the

Project.  (Pl.'s Summ. J. Mem. at 1; Def.'s Summ. J. Mem. at 4.)  The Surety Bond identified Defendant as "Surety," Shoemaker as "Contractor," and the Isle of Capri Associates, LP as "Owner."  (Pl.'s Summ. J. Mem. Ex. A-2 [Surety Bond].)

On November 12, 2004, Sloan entered into a subcontract (the "Subcontract") with Shoemaker to provide drywall and carpentry work for the Project.  (Pl.'s Summ. J. Mem. at 2 & Ex. A-1 [Subcontract]; Def.'s Summ. J. Mem. at 3.)  The Subcontract rendered Sloan a potential Claimant under the Surety Bond, which defines Claimant to include any entity that has a direct contract with the Contractor "to furnish labor, materials or equipment for use in the performance of the Contract."  (Surety Bond ¶ 15.1.)

The Contractor filed an action on May 31, 2007 against the Owner in the Court of Common Pleas of Philadelphia County, alleging that it had substantially completed the work on the Project, but the Owner had failed to pay, in violation of the parties' contract.  (Pl.'s Summ. J. Mem. at Ex. B [Contractor's Compl.].)  Shortly after the Contractor sued the Owner, and in fulfillment of the notice requirements of the Surety Bond, Plaintiff provided Defendant with notice of its claims for outstanding amounts due and owing by the Contractor and requested payment.  (*Id.* at 7 & Ex. A-3 [Notice of Claim]; Def.'s Summ. J. Mem. at 5.)

By letter dated July 12, 2007, Defendant denied Plaintiff's claim in its entirety.  (Pl.'s Summ. J. Mem. at 3 & Ex. A-4 [Surety's Resp. to Claim]; Def.'s Summ. J. Mem. at 5.)  Defendant noted that the Owner had not yet made payment to the Contractor for Plaintiff's work and referenced the Philadelphia County court action.  (Surety's Resp. to Claim.)  The Defendant asserted that the Subcontract contained "a clear condition precedent that necessitates that Isle of Capri make payment to Shoemaker prior to Sloan being able to assert a payment demand(s) against Shoemaker and/or its

Surety." (*Id.*) The specific language that Liberty Mutual referred to, which it termed a "pay-if-paid" defense, reads:

> Final payment [to the Subcontractor] shall be made within thirty (30) days after the last of the following to occur, the occurrence of all of which shall be conditions precedent to such final payment: . . . (6) Contractor shall have received final payment from the Owner for the Subcontractor's Work . . . .

(Subcontract § 6(f).)

Plaintiff filed it Complaint on December 18, 2007. Defendant moved for dismissal or a stay of the action, pending the resolution of the Contractor's case against the Owner.[1] The Court granted the stay. After being informed that the Contractor's case was settled, Plaintiff filed a motion for summary judgment on October 22, 2008. (Pl.'s Summ. J. Mem. at 5.) The stay was lifted shortly thereafter and Defendant filed a cross-motion for summary judgment on December 10, 2008. On July 14, 2009, the case was transferred from the Honorable Bruce W. Kauffman to this Court. Oral argument on the motions for summary judgment was held on August 21, 2009.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

---

[1] The Subcontract provides the Contractor with six months to either resolve any payment dispute with the Owner or sue for the outstanding monies. (Subcontract ¶ 6.f.) If the Contractor sues the Owner for payment during that six-month period, the Subcontract stipulates that Sloan must wait for the Contractor's case against the owner to be complete before bringing its own lawsuit against the Contractor. (*Id.*) However, if the statute of limitations on a surety bond contains a limitation period, the subcontractor must commence a proceeding against the surety within the limitation period, but not more than 60 days before it expires. (*Id.*) Accordingly, Plaintiff commenced this action against Defendant to avoid the statute of limitations running out, although the Contractor's case had not yet been resolved.

any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party bears the initial burden of identifying those portions of the record that it believes illustrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the moving party makes such a demonstration, the burden then shifts to the nonmovant, who must offer evidence that establishes a genuine issue of material fact that should proceed to trial. *Id.* at 324; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). When the moving party does not bear the burden of persuasion at trial, it may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry its burden of persuasion at trial. *Celotex*, 477 U.S. at 323. Thereafter, the nonmoving party demonstrates a genuine issue of material fact if sufficient evidence is provided to allow a reasonable finder of fact to find for the nonmoving party at trial. *Anderson*, 477 U.S. at 248.

In reviewing the record, "a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994). Furthermore, a court may not make credibility determinations or weigh the evidence in making its determination. *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S.133, 150 (2000); *see also Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 665 (3d Cir. 2002). The same standards apply to cross motions for summary judgment. *Appelmans v. City of Phila*, 826 F.2d 214, 216 (3d Cir. 1987); *see also Transportes Ferreos de Venezuela II CA v. NKK Corp.*, 239 F.3d 555, 560 (3d Cir. 2001).

**III.    DISCUSSION**

Plaintiff moves for summary judgment in the amount of $1,074,260.09, plus interest and taxable costs. (Pl.'s Summ. J. Mem. at 14.) Defendant, in response, contends that it is entitled to assert the defense of a "pay-if-paid" clause in the Subcontract. (Def.'s Summ. J. Mem. at 1.) It also asserts that Plaintiff has incorrectly calculated the amount of its claim and is entitled to recover, at most, $785,067. The parties raise several additional arguments that the Court will address prior to reaching the key issue in this case: whether §6(f) of the Subcontract is a "pay-if-paid" or "pay-when-paid" clause.

**A.    Defendant Complied with the Terms of the Surety Bond and Has Not Forfeited its Right to Dispute the Claim Amount**

Plaintiff contends that Defendant failed to comply with the terms of the Surety Bond in disputing the amount of Sloan's claim and, therefore, has forfeited its right to dispute that amount. (Pl.'s Summ. J. Mem. at 9-11.) Defendant contends that its response fully complied with the requirements of § 6.1 of the Surety Bond. That provision stipulates that once the Claimant has satisfied the conditions of § 4, the Surety, at its own expense, shall "[s]end an answer to the Claimant, with a copy to the Owner, within 45 days after receipt of the claim, stating the amounts that are undisputed and the basis for challenging any amounts that are disputed." (Surety Bond § 6.1.)

By letter dated June 7, 2007, Sloan gave Liberty Mutual notice of its impending claim for unpaid amounts, as required by § 4.1 of the Surety Bond. Thirty-five days later, on July 12, 2007, Liberty Mutual responded by denying payment in its entirety on the basis of the "pay-if-paid" provision in the Subcontract. Noting that the Owner had not yet paid the Contractor for Plaintiff's

work, Defendant asserted that the Subcontract contained "a clear condition precedent that necessitates that Isle of Capri [the Owner] make payment to Shoemaker [the Contractor] prior to Sloan being able to assert a payment demand(s) against Shoemaker and/or its Surety." (Surety's Resp. to Claim.)  Plaintiff contends that Defendant "has never disputed the *amount* of Sloan's Claim, only the timing of when it would be paid." (Pl.'s Summ. J. Mem. at 9.)  As such, since 45 days have passed since receipt of the claim, Plaintiff argues that Defendant is now barred by the terms of the Surety Bond from disputing the amount of the claim.  Defendant rejects this argument, asserting that it fully complied with the Surety Bond's provisions when it "disputed the claim in its entirety, provided the basis for rejecting the amount claimed by Sloan, and requested that Sloan provide documentation to support its position." (Def.'s Summ. J. Mem. at 24.)

The Court does not read § 6.1 to proscribe a formalistic requirement that a Surety must list the undisputed amount, even if that amount is zero.  Reading § 6.1 in such a way, so as to rule that Defendant forfeited its right to contest the claim amount, would run contrary to the Pennsylvania Supreme Court's directive to avoid forfeitures of rights when interpreting contracts.  *Carsek Corp. v. Schifter*, 246 A.2d 365, 369 (Pa. 1968) (noting that Pennsylvania Supreme Court has "always sought to avoid forfeitures, and has interpreted contracts in such a way as to effectuate that purpose.").  Defendant had no reason to state an undisputed amount, because it was contesting the entire amount of the claim.  Since Liberty Mutual disputed the entire amount of Sloan's claim, its response adheres to the plain and unambiguous requirements of § 6.1 of the Surety Bond.

In its Reply Memorandum, Plaintiff contends that "Liberty Mutual's response to Sloan's claim contested only Sloan's entitlement to payment at that time, not the *amount* of the claim . . . ." (Reply Mem. in Supp. of Mot. by Pl. for Summ. J. against Def. and Resp. by Pl. to Cross-Motion

by Def. [Pl.'s Reply Mem.] at 16.) To the extent Plaintiff believes Defendant was required to dispute the value of the work performed by Plaintiff, in addition to raising a general defense to liability, the Court is not convinced by this argument. Such a reading is not evident from the text of § 6.1 and would lead to an undesirable forfeiture of Defendant's rights. It would also cause further confusion as, to the extent this reading would require Defendant to state an undisputed amount, the Surety would, under the terms of the next section, then be required to promptly "[p]ay or arrange for payment" of this undisputed amount. (Surety Bond § 6.2.)

Accordingly, Defendant has retained its right to dispute Sloan's claims.

### B. Defendant, as a Surety, is Able to Assert any Defenses Available to the Contractor, its Principal

Defendant argues that, as a Surety, Pennsylvania law permits it to raise any and all defenses available to the Principal (in this case the Contractor), including what it terms the "pay-if-paid" clause. (Def.'s Summ. J. Mem. at 8-15.) Plaintiff, during oral argument in this matter, conceded, for the purposes of these motions, that Defendant may assert all defenses available to the Contractor. As Judge Kaufmann declared in his August 15, 2008 Order, which resolved Defendant's motion to dismiss, or, in the alternative, stay the action: "[i]t is well-established under Pennsylvania law that the liability of a surety is no greater than that of the surety's principal, and that a surety may assert any defense of which his principal could take advantage."[2] *Sloan v. Liberty Mutual*, Civ. A. No. 07-

---

[2] Judge Kaufmann's order refers to § 6(f) as a "pay-if-paid" provision, but did not analyze its implications and effect in depth, as his analysis focused on whether the case should be stayed pending resolution of the Contractor's action against the Owner. Although he used the term "pay-if-paid," to the extent Judge Kaufmann acknowledged that the provision "limits the subcontractor's right to recovery," his subsequent discussion of this limitation seems to treat it as a timing mechanism, "[t]he Court further concludes that Plaintiff expressly contracted to limit its right to recovery against both Shoemaker and Defendant *until* resolution of Shoemaker's litigation against Isle of Capri." 2008 WL 3832519, at *3. Hence, although the provision is

5325, 2008 WL 3832519, at *3 (E.D. Pa. Aug. 15, 2008) (citing cases); *see also North Am. Specialty Ins. Co. v. Chichester Sch. Dist.*, 158 F.Supp.2d 468, 471 (E.D. Pa. 2001).

Accordingly, Defendant may raise any defenses that would be available to the Contractor.

**C.    Is §6(f) of the Subcontract a Pay-if-Paid Clause that Bars Plaintiff's Claim for Relief from Defendant?**

The key issue in this case is whether § 6(f) limits Plaintiff's recovery from the Contractor or Defendant to the amount the Contractor received from the Owner, as Defendant contends, or whether it simply requires Plaintiff to wait until any dispute between the Contractor and Owner is resolved before proceeding with a claim against the Contractor or Surety, as Plaintiff contends. The crux of this dispute revolves around this language in the Subcontract:

> Final payment [to the Subcontractor] shall be made within thirty (30) days after the last of the following to occur, the occurrence of all of which shall be conditions precedent to such final payment: . . . (6) Contractor shall have received final payment from the Owner for the Subcontractor's Work . . . .

(Subcontract § 6(f).) According to Defendant, this language constitutes a "pay-if-paid" clause through which "the parties expressly contracted to shift the risk [of the Owner's non-payment] from Shoemaker to Sloan." (Def.'s Summ. J. Mem. at 16-17.) Plaintiff disputes this and contends that "the Subcontract provides that Sloan must wait for the Contractor to collect whatever it can from the Owner first, but may then pursue its claim against Liberty Mutual," as such, Plaintiff construes the clause as a "pay-when-paid" provision. (Pl.'s Reply Mem. at 9.)

   *1.    "Pay-if-Paid" and "Pay-when-Paid" Clauses Defined*

---

referred to as a pay-if-paid clause, the phrase "bars any recover until" would seem more appropriate for a timing mechanism that prevents recovery until receipt of final payment from the owner, but does not limit the subcontractor's recovery to the amount the contractor receives form the owner.

8

"Pennsylvania courts construe contract clauses that condition payment to a subcontractor on the contractor's receipt of funds from the owner of the project as 'pay-if-paid' clauses that do not require the contractor to pay a subcontractor until the contractor has received those funds from the owner of the project." *LBL Skysystems (USA), Inc. v. APG-America, Inc.*, Civ. A. No. 02-5379, 2005 WL 2140240, at *32 (E.D.Pa. Aug. 31, 2005) (citing *C.M. Eichenlaub Co. v. Fidelity & Deposit Co.*, 437 A.2d 965, 967 (Pa. Super. Ct. 1981); *Cumberland Bridge Co. v. Lastooka*, 8 Pa. D. & C.3d 475, 482 (1977)). In contrast, "pay-when-paid" clauses "merely create a timing mechanism for a contractor's payments to a subcontractor and do not condition payments to a subcontractor on the contractor's receipt of those payments from the project owner." 2005 WL 2140240, at *32 (citing *United Plate Glass Co. v. Metal Trims Indus., Inc.*, 525 A.2d 468 (Pa. Super. Ct. 1987)).[3]

"A pay-if-paid condition generally requires words such as 'condition,' 'if and only if,' or 'unless and until' that convey the parties' intention that a payment to a subcontractor is contingent on the contractor's receipt of those funds." 2005 WL 2140240, at *32 (citing *Earthdata Int'l of N.C., L.L.C. v. STV Inc.*, 159 F.Supp.2d 844, 847 (E.D. Pa. 2001); *Eichenlaub*, 437 A.2d at 967). In *LBL Skysystems* the court found that the relevant contract language, which stated that "disbursement will be processed as funds are received," constituted a pay-if-paid clause as payment was conditioned on the payer's receipt of the funds. 2005 WL 2140240, at *32. Pay-if-paid clauses in a subcontract act to shift the risk of loss, from non-payment by the owner, to the subcontractor and courts have considered a range of factors in determining whether the parties intended to shift this risk.

---

[3] These two terms have not always been given uniform meaning by courts and contracting parties. *Compare, e.g. LBL Skysystems*, 2005 WL 2140240, at *32 (describing as "pay-when-paid" clauses that merely create a timing mechanism, rather than shift burden of loss) *with Shearman & Assocs., Inc. v. Cont'l Cas. Co.*, 901 F. Supp. 199, 201 (D.V.I. 1995) (describing as "pay-when-paid" a clause that expressly shifts burden of loss).

### 2. How Courts Have Determined the Type of Clause a Contract Contains

Determining whether a particular contract contains a pay-if-paid or pay-when-paid clause requires a careful analysis of the contractual language. In some cases, the parties' intent is clear and making this determination poses few difficulties. In *Eichenlaub*, which *LBL Skystems* cites as an example of a pay-if-paid clause, the contractual language was far stronger than that found in the instant case. It stated that the builder "*shall be under no obligation* to make any payments to contractor for materials delivered *unless and until* Builder is first paid for such materials and work by the owner." 437 A.2d at 967 (emphasis added). The court's analysis emphasized the phrase "unless and until.[4] *Id.*

In contrast, in *United Plate Glass* the Commonwealth Court considered whether a pay-if-paid clause existed based on language that stated: "[f]inal payment shall be due when the work described in this subcontract is fully completed and performed in accordance with the contract documents and is satisfactory to the architect." 525 A.2d at 470. The contract further provided that "final payment

---

[4] Another case that *LBL Skystems* identifies as an example of a pay-if-paid clause, the Washington County Court of Common Pleas decision *Cumberland Bridge*, interpreted language more akin to that found in this case. *See* 8 Pa. D. & C.3d at 476-77. The contractor agreed to make the last payment to the subcontractor immediately after four conditions were met, one of which was "the final payment [is] received by the Contractor." *Id.* at 476-77. The court found this language to be "clear and unequivocal" and concluded that "[t]he language of the contract plainly makes the payment by the owner to the contractor a condition precedent inter alia to the contractor's duty to pay the subcontractor." *Id.* at 479, 482. However, the Court finds *Cumberland Bridge*'s persuasive value diminished given the distinguishable facts of that case. As the court noted, there was "no assertion that [the owner] is not going to pay eventually whatever sum may be due." *Id.* at 479. The plaintiff instead contended that it was entitled to payment within "a reasonable time" after competing the work, an assertion the court rejected given the contract's clear language. *Id.* at 477. Hence the court was not focused on resolving whether payment to the subcontractor was limited to the amount received by the contractor from the owner, but instead upon whether payment to the subcontractor was "presently due." *See id.* at 476.

will be made to subcontractor upon final acceptance of the work by the owner, the approval thereof by the architect and the receipt of payment in full from the general contractor." *Id.* The court held that this contract language did not render payment by the owner and prime contractor to the wall and door contractor an absolute condition precedent to a subcontractor's receipt of payment from the wall and door contractor. *Id.* at 471.

The court in *United Plate Glass* concluded that the first sentence, which used the phrase "shall be due," addressed the defendant's liability to the plaintiff for final payment. *Id*. The second sentence was read as merely addressing the timing of payment. *Id.* (reasoning that "conditions" in second sentence "are not absolute prerequisites to the tender of final payment," but instead merely "serve as a timing mechanism."). The court's interpretation was further supported by a separate provision of the contract, which specifically stated that if "the Contractor does not receive payment for any cause which is not the fault of the Subcontractor, the Contractor shall pay the Subcontractor, on demand, a progress payment [based on the computation in another portion of the contract] or the final payment as provided [in the section excerpted above]." *Id.* This section, the court concluded, showed the parties' intent to *not* shift the risk of loss to Plaintiff. *Id.* The contractual language in *United Plate Glass*, although similar to that found here, did not use the term "conditions precedent" or an equivalent phrase. At the same time, the Subcontract before the Court also begins with the phrase "[f]inal payment shall be made," which is similar to the first sentence of the clause in *United Plate Glass*, which that court decided assigned liability, while subsequent sentences merely dealt with the timing of payments. (Subcontract § 6(f).)

Ultimately, the mere presence of language such as "condition precedent" or "payment shall be made" is insufficient to determine whether a clause is a pay-if-paid or pay-when-paid provision.

11

Instead the Court must look at the contract as a whole to determine whether the parties intended to shift the risk of nonpayment. *See Engelhard Corp. v. N.L.R.B.*, 437 F.3d 374, 381 (3d Cir. 2006) (noting role of context in determining meaning of words and phrases). Other courts in this Circuit, in determining whether a payment clause is a pay-if-paid or pay-when-paid provision, have focused on whether the clause reveals the parties' intent to shift the risk of loss.

In *Fixture Specialists, Inc. v. Global Construction,* Civ. A. No. 07-5614, 2009 WL 904031 (D. N.J. Mar. 30, 2009), which featured a dispute between a subcontractor and surety, the court analyzed a clause in the subcontract specifically titled "Pay When Paid." Defendant, who was also a defendant in that action, asserts that the case's legal analysis supports its own Cross-Motion for Summary Judgment. (Mem. of Law in Further Supp. of Def.'s Cross-Motion for Summ. J. and in Opp'n to Pl.'s Mot. for Summ. J. [Def.'s Mem. of Law in Further Supp.] at 2.)

Although titled a "Pay When Paid" provision, the clause at issue in *Fixture Specialist* appears to have operated as a pay-if-paid clause, as the Court has been using that term. The court concluded that the language used in the payment clause clearly showed that "the parties intended to shift any and all circumstances of Owner's nonpayment to [the subcontractor]." 2009 WL 904031, at *6. The subcontract clause at issue read:

> Subcontractor agrees that Contractor shall never be obligated to pay Subcontractor under any circumstances, unless and until funds are in hand received by Contractor in full, less any applicable retainage, covering the Work or material for which Subcontractor has submitted an Application for Payment. This is a condition precedent to any obligation of Contractor, and shall not be construed as a time of payment clause. This condition precedent also applies to Contractor's obligation to pay retainage, if any, Contractor shall never be obligated to pay retainage to Subcontractor until Contractor has received its retainage in hand in full. This paragraph governs all other portions of this Subcontract, and any conflicting language shall be modified or deemed to be consistent herewith.

*Id.* at *2. Although *Fixture Specialist* rejected the position that, "the failure of the payment clause to expressly state a shifting of the risk to the subcontractor renders the clause only a time of payment position," the court, relying on a New Jersey state case, still required clear evidence of the parties' intent to shift the risk. *Id.* at *5 (citation omitted).

The language in *Fixture Specialist* clearly evidenced an intent to shift the risk and it differed in important ways from the language at issue in this case. The first sentence of the clause expressly provided that the contractor "shall never be obligated to pay" unless funds are received "in full" from the owner for the work or material in question. It also explicitly stated that it is not a time of payment clause. In this case, although the clause also uses the term "condition precedent," its language does not offer the same strongly worded shifting of risk, nor does it expressly state that it is not a time of payment clause. Moreover, it refers to "final payment from the owner," whereas the language in *Fixture Specialist* referred to payment "in full."

In fact, the language in the clause at issue in this case seems more similar to that analyzed in *Titan Stone, Tile & Masonry, Inc. v. Hunt Construction Group, Inc.*, Civ. A. No. 05-3362, 2007 WL 869556 (D. N.J. Mar. 20, 2007). In *Titan* the relevant payment clause read:

> Final Payment, consisting of the unpaid balance of the [Agreement] Price, shall be made only after all of the following events have occurred . . .
> (g) Final Payment by Owner to [Contractor] for [Subcontractor] Work. Final Payment by the Owner to [Contractor] shall be an express condition precedent to [Contractor's] duty to make Final Payment to [Subcontractor].

*Id.* at *6. This language, which also uses the phrase "condition precedent," but does not explicitly shift the risk of nonpayment to the subcontractor, is much closer to the language in the instant case. Moreover, another portion of the agreement in *Titan*, entitled "Risk of Nonpayment by Owner" stated that:

13

> Receipt of payment by [Contractor] from the Owner is a condition precedent:
> (a) to the right of [Subcontractor] to receive payment from [Contractor], unless the failure to have received payment from the Owner shall have been caused solely by the fault of [Contractor]; and
> (b) to [Subcontractor's] right to make any claims against [Contractor's] payment bond, if a payment bond is posted for the Project.

*Id.* Despite this language, which again used the phrase "condition precedent" and is more extensive than the language in the Subcontract in this case, the court in *Titan* denied Defendant summary judgment, concluding that "there remains a genuine issue of material fact as to whether any provision of the Agreement constitutes a clear indication that [the contractor and subcontractor] had agreed that the collection risk would shift to [the subcontractor]." Instead, these provisions might be read to represent a timing mechanism for payments. *See id.* Furthermore, the *Fixture Specialist* court, stressing the language in that case stating that the contractor "shall never be obligated to pay . . . under any circumstances, unless and until funds are in hand received by Contractor in full," emphasized that, unlike the clause in *Titan*, the clause in *Fixture Specialist* "use[d] unambiguous language to clearly indicate the intent of the parties to shift the risk of nonpayment to . . . the subcontractor." 2009 WL 904031, at *4 n.5.

### 3. The Subcontract in this Case Does not Indicate that the Parties Intended to Shift the Risk of Non-Payment to Plaintiff

The clause at issue in this case uses the phrase "conditions precedent." And, unlike in *United Plate Glass*, the Subcontract does not contain a separate provision expressing the parties' intent to not shift the risk of nonpayment. Nonetheless, the Court does not deem the use of the phrase "condition precedent" a sufficient indication that the parties intended to shift the risk of non-payment to the Subcontractor and that this provision represents a pay-if-paid clause. Beyond this phrase, the Subcontract lacks the strongly worded language of *Fixture Specialist* and *Eichenlaub* stating that the

14

contractor has no obligation to pay the subcontractor "unless and until" funds are received from the owner. Instead, similar to the provision in *United Plate Glass*, the clause at issue, prior to listing the "conditions precedent" begins with the phrase "[f]inal payment *shall* be made." (Subcontract 6(f) (emphasis added).) As in *United Plate Glass* and *Titan*, the Subcontract also refers to "final payment" and not "full payment," as did the clause in *Fixture Specialist*. The term "final," in contrast with "full," is more naturally read to indicate the timing or order of payment, rather than the extent or amount of payment and as such accords with an interpretation of the clause as a "pay-when-paid" provision. In light of these considerations, the Court concludes that §6(f) of the Subcontract represents a pay-when-paid and not a pay-if-paid clause and the Subcontract does not reveal an intent to shift the risk of the Owner's non-payment to the Subcontractor. This reading is reinforced by the Second Restatement of Contracts, which states: "In resolving doubts as to whether an event is made a condition of an obligor's duty, and as to the nature of such an event, an interpretation is preferred that will reduce the obligee's risk of forfeiture, unless the event is within the obligee's control or the circumstances indicate that he has assumed the risk." RESTATEMENT (SECOND) OF CONTRACTS § 227(1). The circumstances here do not indicate Plaintiff assumed the risk of nonpayment.

### 4. *Pennsylvania's Contractor and Subcontractor Payment Act Does not Change the Court's Analysis*

Defendant asserts that the Pennsylvania Contractor and Subcontractor Payment Act supports its position that Plaintiff's claim is barred. 73 PA. CONS. STAT. § 501 *et seq.* (2006) (hereinafter "Payment Act"). According to the Defendant, the Payment Act contains the statutory equivalent of a pay-if-paid provision. (Def.'s Summ. J. Mem. at 21-22.) Plaintiff counters that this provision is

properly understood as the equivalent of a pay-when-paid provision. (Pl.'s Reply. Mem. at 14.) The provision of the Payment Act, § 507 ("Contractors and Subcontractor's Payment Obligations"), provides that:

> When a subcontractor has performed in accordance with the provisions of the contract, a contractor shall pay to the subcontractor, and each subcontractor shall in turn pay to the subcontractor's subcontractors, the full or proportional amount received for each such subcontractor's work and materials, based on work completed or service provided under the subcontract, 14 days after receipt of each progress or final payment or 14 days after receipt of the subcontractor's invoice, whichever is later.

73 PA. CONS. STAT. § 507(c). "[T]he Pennsylvania Supreme Court has not yet interpreted the application of the Act to sureties." *National Fire Ins. Co. v. Sippel Dev. Co.*, Civ. A. No. 06-390, 2006 WL 1670201, *3 (W.D. Pa. June 15, 2006) (quoting *R.. W. Sidley, Inc. v. U.S. Fid. & Guar. Co.*, 319 F.Supp.2d 554, 561 (W.D. Pa. 2004).

The Pennsylvania Superior Court has examined § 507 and declared that "*[f]or purposes of penalties provided by the Act*, a contractor's duty to pay subcontractors arises to the extent of the 'amount received' from the owner." *Joseph F. Cappelli & Sons, Inc. v. Keystone Custom Homes, Inc.*, 815 A.2d 643, 645 (Pa. Super. 2003). The parties dispute the import of the introductory phrase "for purposes of penalties." Plaintiff contends this reference to penalties indicates that *Cappelli* treats § 507(c) as a pay-when-paid provision. (Pl.'s Reply. Mem. at 15.) Defendant responds that the court's ruling implies that absent payment from the owner, a contractor has no obligation to pay a subcontractor. (Def.'s Reply Mem. at 21.)

A Commonwealth Court case also cited by Defendant applied § 507 to conclude that, because the plaintiff had not refuted the defendant's evidence that the defendant had not been paid, the amount in question had not yet become due under the Payment Act and so an award of interests and

costs was inappropriate. *Diamond-Huntbach Const. Corp. v. Lovett, Inc.*, Civ. A. No. 04-2186, 2005 WL 3617562, *3 (Pa. Commw. Ct. Nov. 28, 2005). However, it does not appear from the opinion that the court read § 507 as a "pay-if-paid" clause rather than simply as a timing mechanism. *See id.*

Moreover, as Plaintiff notes, the first clause of § 507 further supports this conclusion: "(a) Entitlement to payment. Performance by a subcontractor in accordance with the provisions of the contract shall entitle the subcontractor to payment from the party with whom the subcontractor has contracted." § 507(a). This provision makes no mention of a possible defense for the contractor in the case of non-payment by the owner and so instead the subsequent sub-parts can be read to merely outline the timing of payments.

Finally, the Pennsylvania Superior Court has declared that: "The underlying purpose of [the Payment Act] is to protect contractors and subcontractors. The Act provides payment deadlines and penalties to encourage fair dealing among parties to a construction contract." *Ruthrauff, Inc. v. Ravin, Inc.*, 914 A.2d 880, 890 (Pa. Super. Ct. 2006). This interpretation would appear to belie any notion that the Pennsylvania legislature sought – through the Payment Act – to shift the risk of non-payment to subcontractors and by extension provide a defense for a surety. Hence, a plain reading of the statute and the relevant Pennsylvania cases leads to the conclusion that this statutory provision is not clearly intended as a pay-if-paid clause, but instead should merely be read as a timing mechanism.

As the circumstances do not indicate the Plaintiff assumed the risk of the Owner's non-payment, Defendant's motion for summary judgment, on the grounds that a pay-if-paid clause in the Subcontract bars Plaintiff's claim against it, is denied.

### D.     The Parties Agree on a Portion of the Amount Plaintiff is Owed for the Work Performed and an Issue of Material Fact Remains as to the Remainder

The parties dispute the amount owed to Sloan for the work performed.  Plaintiff seeks $1,074,260.09.  (Pl.'s Summ. J. Mem. at 14.)  Defendant asserts that the unpaid balance for Sloan's work amounts to $785,067.  (Def.'s Summ. J. Mem. at 7 & Ex. A [Linus Aff.] ¶ 6.)  In response, Plaintiff contends that it should at least be awarded summary judgment in the amount identified by Defendant, $785,067, and that any remaining amount due may be an issue of material fact for which discovery can be pursued.  The Court agrees and accordingly will enter judgment in favor of Plaintiff in the amount of $785,067, the undisputed value of the work for which Sloan was not paid.  The parties will be permitted to conduct discovery as to whether Plaintiff is entitled to any additional amount.

### IV.     CONCLUSION

The Contractor's dispute with the Owner has been resolved and Plaintiff's claim against Defendant is therefore timely.  Defendant complied with the terms of the surety bond and has not forfeited its right to dispute the claim amount.  Since the Subcontract between Plaintiff and the Contractor did not shift the burden of non-payment by the Owner to the Subcontractor and did not contain a pay-if-paid clause, Defendant, although it may step into the shoes of the Contractor, is not entitled to assert that a pay-if-paid clause bars recovery under the Surety Bond.  Plaintiff is entitled to recover from Defendant the amount of money it is still owed for the work it performed.  An appropriate Order will be docketed separately.