IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SLOAN & CO., | : | |
|     Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| LIBERTY MUTUAL | : | |
| INSURANCE CO., | : | No. 07-5325 |
|     Defendant. | : | |

## MEMORANDUM

Schiller, J.                                                                                                         December 3, 2009

This dispute arises out of the failure of Liberty Mutual Insurance Co. ("Liberty Mutual" or "Defendant") to pay Sloan & Co. ("Sloan" or "Plaintiff") for $1,074,260.09 worth of labor and materials that Sloan claims it is owed under a surety bond that Liberty Mutual executed with Shoemaker Construction Company ("Shoemaker"). The Court previously granted partial summary judgment to Sloan in the amount of $785,067. Presently before the Court is Plaintiff's Second Motion for Partial Summary Judgment and Defendant's Second Cross-Motion for Partial Summary Judgment. For the reasons stated below, Sloan's Motion is granted in part and denied in part; and Liberty Mutual's Motion is denied.

## I.    BACKGROUND

On May 7, 2004, Shoemaker, a general contractor, entered into a contract with Isle of Capri Associates, LP ("IOC"), a developer, for a $90.7 million construction project known as Waterfront Square Condominiums & Spa, at Piers 36-39 North, Philadelphia, Pennsylvania (the "Project"). (Mem. of Law in Supp. of Mot. by Pl. to Lift Stay and Enter Summ. J. against Def. [Pl.'s First Summ. J. Mem.] at 1; Mem. of Law in Supp. of Def.'s Cross-Mot. for Summ. J. and in Opp'n to

Pl.'s Mot. for Summ. J. [Def.'s First Summ. J. Mem.] at 3.)  Liberty Mutual issued a payment bond (the "Surety Bond") on September 9, 2004 to Shoemaker for the construction of the Project.  (Pl.'s First Summ. J. Mem. at 1; Def.'s First Summ. J. Mem. at 4.)

On November 12, 2004, Shoemaker subcontracted with Sloan for drywall and carpentry work for the Project.  (Pl.'s First Summ. J. Mem. at 2 & Ex. A-1 [Subcontract]; Def.'s First Summ. J. Mem. at 3.)  The subcontract rendered Sloan a potential claimant under the Surety Bond, which defines claimant to include any entity that has a direct contract with the contractor "to furnish labor, materials or equipment for use in the performance of the Contract."  (Pl.'s First Summ. J. Mem. Ex. A-2 [Surety Bond] ¶ 15.1.)

Shoemaker filed an action on May 31, 2007 against IOC in the Court of Common Pleas of Philadelphia County ("Shoemaker case"), alleging that it had substantially completed the work on the Project and that IOC had failed to pay in violation of the parties' contract.  (Pl.'s First Summ. J. Mem. Ex. B [Contractor's Compl.].)  Shortly after Shoemaker sued IOC, Sloan provided Liberty Mutual with notice of its claims for outstanding amounts due and owing by Shoemaker and requested payment under the Surety Bond.  (Pl.'s First Summ. J. Mem. Ex. A-3 [Notice of Claim]; Def.'s First Summ. J. Mem. at 5.)

By letter dated July 12, 2007, Liberty Mutual denied Sloan's claim in its entirety, alleging that it owed Sloan no money until IOC made payment to Shoemaker, which had not yet occurred. (Pl.'s First Summ. J. Mem. at 3 & Ex. A-4 [Surety's Resp. to Claim]; Def.'s First Summ. J. Mem. at 5.)

Sloan filed its Complaint on December 18, 2007 and moved for summary judgment on October 22, 2008 after being informed that Shoemaker's case against IOC was settled.  Liberty

Mutual filed a cross-motion for summary judgment on December 10, 2008.

On August 25, 2009, this Court entered partial summary judgment in Sloan's favor, finding that Sloan was entitled to payment under the Surety Bond. The parties disputed the amount owed under the Surety Bond, however, the Court entered partial summary judgment for Sloan on the undisputed amount of $785,067 and provided the parties until October 26, 2009 to conduct discovery on the additional amount, if any, due to Sloan, plus the amount of any interest and costs.

Sloan's initial claim against Liberty Mutual can be broken down as follows:

| | | |
|---|---|---|
| Summary Judgment Order (8/25/09) | | $785,067 |
| Subcontractor Specific Legal Fees | $16,579 | |
| Allocation of Repairs | $40,370 | |
| Becht Deficiency Report | $24,600 | |
| Time & Materials Provided | $66,324 | |
| Lump Sum Proposals Performed | $141,320 | |
| **Subtotal:** | $289,193 | $289,193 |
| **Total:** | | $1,074,260 |

(Stip. Regarding Attorney's Fees, Costs and Expenses ¶ 2.) Now, Sloan claims that the issue of legal fees, repair costs, deficiencies, and prejudgment interest can be decided in its favor on summary judgment. Liberty Mutual responds that it is entitled to summary judgment on the issue of attorney's fees (though it now maintains that the fees are much greater than $16,579), deficiencies, and prejudgment interest. Liberty Mutual also argues that summary judgment should be denied on the issue of repairs.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when the admissible evidence fails to demonstrate a dispute of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). When the moving party does not bear the burden of persuasion at trial, the moving party may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry its burden of persuasion at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Thereafter, the nonmoving party demonstrates a genuine issue of material fact if sufficient evidence is provided to allow a reasonable jury to find for it at trial. *Anderson*, 477 U.S. at 248. In reviewing the record, "a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994). Furthermore, a court may not make credibility determinations or weigh the evidence in making its determination. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *see also Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 665 (3d Cir. 2002).

## III. DISCUSSION

### A. Legal fees for the Contractor Case

Paragraph 20 of the subcontract reads, in relevant part, as follows:

> In the event Subcontractor asserts a claim for payment of the Subcontract Sum or a portion thereof or for payment of any increase to the Subcontract Sum or payment upon any claim or for damages or asserts a defense to or takes exception with any claims, determinations or findings by Contractor or Owner . . . pertaining in any manner to Subcontractor's work (hereafter Subcontractor's Claim), and in the event that Contractor . . . submits said Subcontractor's Claim to the Owner . . . for a decision or determination, then all decisions and determinations made by the Owner

> . . . shall be binding upon the Subcontractor . . . . The decision . . . of the Owner . . . shall be final and conclusive on the Subcontractor except to the extent that the Contractor may . . . commence a proceeding in Court . . . . Then, in such event, Subcontractor agrees to be bound to the Contractor to the same extent the Contractor is bound to the Owner . . . . If the Subcontractor's claims are prosecuted or defended by the Contractor against Owner or others, then the Subcontractor agrees . . . to pay or reimburse Contractor for all expenses and costs, if any, incurred in connection therewith.

Liberty Mutual contends that this clause entitles Shoemaker to reimbursement from Sloan for a portion of the fees and expenses it incurred in its lawsuit against IOC, thus offsetting a portion of the amount Liberty Mutual owes to Sloan as Shoemaker's surety. Whether this is true depends upon whether Shoemaker's case against IOC was brought on behalf of Sloan or solely on Shoemaker's own behalf.

Liberty Mutual contends that during settlement discussions in the Shoemaker case, IOC sought to reduce Shoemaker's total claim by $418,392 based on delays and problems with work performed by Sloan, and that Shoemaker met with its subcontractors to discuss settlement. (Def.'s Second Cross-Mot. for Partial Summ. J. at 4.) This information, taken as true for the purposes of Sloan's motion, does not make paragraph 20 of the subcontract applicable here. IOC may have taken issue with Sloan's work, but IOC's contract and its legal dispute was with Shoemaker. As this Court's August 25, 2009 Memorandum makes clear, Shoemaker's obligation under the subcontract to pay Sloan is not contingent on Shoemaker's receipt of payment in full from IOC, making it apparent that Shoemaker was pursuing its own claim to secure funds with which to pay its obligations to Sloan, not bringing a claim on Sloan's behalf. Furthermore, neither the complaint nor the answer in Shoemaker's case mentions Sloan. (Pl.'s Mot. for Partial Summ. J. Ex. C [Contractor Compl.] & Ex. D [Owner's Answer].)

## B. Legal Fees for the Present Case

In addition to the legal fees for Shoemaker's case against IOC, Liberty Mutual argues that it is entitled to attorney's fees Shoemaker incurred in connection with this case. It bases this contention on paragraph 10 of the subcontract, which reads

> To the fullest extent permitted by the applicable law . . . Subcontractor assumes the entire responsibility and liability for any and all claims, damage and injury . . . of any nature or character caused by, resulting from, arising out of or occurring in connection with the execution of its Work . . . and if any such claims, damage, or injury be made or asserted or threatened or incurred, whether or not such claims, damage, or injury are based upon Contractor's or the Owner's alleged active or passive negligence or participation in the wrong or upon any alleged breach of any statutory duty or obligation on the part of the Contractor or the Owner, Subcontractor agrees to defend, indemnify and hold harmless the Contract and Owner . . . .

It is well-settled in Pennsylvania that an indemnity agreement that covers loss due to the indemnitee's own negligence must be clear and unequivocal. *Jacobs Constructors, Inc. v. NPS Energy Servs., Inc.*, 264 F.3d 365, 371 (3d Cir. 2001) (citing *Perry v. Payne*, 66 A. 553 (Pa. 1907); *Ruzzi v. Butler Petroleum Co.*, 588 A.2d 1 (Pa. 1991)). This principle also applies to indemnification for contractual liability to a third party. *Id.*; *cf. Bernotas v. Super Fresh Food Mkts., Inc.*, 863 A.2d 478, 483 (Pa. 2004). For an indemnity agreement to cover an indemnitee's contractual liability to a third party, the parties must use clear and unequivocal language indicating as much. *Jacobs Constructors*, 264 F.3d at 371. Pennsylvania's "rule of law requiring indemnification language to be unequivocally stated in the contract," *Bernotas*, 863 A.2d at 483, applies with special force in a case such as this, in which an indemnitee claims it is owed indemnification from the indemnitor for a lawsuit brought by the latter against the former for failure to pay pursuant to a contract. Under Liberty Mutual's theory of paragraph 10 of the subcontract,

6

Shoemaker could hold its subcontractors hostage by refusing to pay legitimate claims and then charging its defense to the legitimate claimants who challenge the denial. The Court will not presume this unusual interpretation of a generally worded indemnification provision such as paragraph 10 of the subcontract.

Therefore, this Court finds that Liberty Mutual is not entitled to deduct any amount for Shoemaker's legal fees from the amount it owes Sloan under the bond. Therefore, the Court will grant summary judgment to Sloan in the amount of $16,579, the sum of attorney's fees that Liberty Mutual initially sought to reduce from Sloan's $1,074,260 claim.

C.  **Repairs**

Sloan seeks a judicial determination that it is not liable to Shoemaker/Liberty Mutual for repair expenses. Liberty Mutual contends that Sloan is liable to Shoemaker for $40,370 worth of repair costs. (Stip. Regarding Attorney's Fees, Costs and Expenses ¶ 2.) It arrived at this figure by totaling all invoices it received from subcontractors for repairs during the course of the project and then allocating them among the various subcontractors. (Pl. Mot. for Partial Summ. J. Ex. E [Deposition of Tom Linus] at 38–49.) Liberty Mutual's allocations were based on approximations that Shoemaker made about how much of the damage was attributable to each subcontractor. (*Id.*) Shoemaker allocated to Sloan ten percent of the $109,143 in paint damage, ten percent of the $326,235 of the wood floor damage, fifteen percent of the $81,077 in kitchen cabinet damage, and eight percent of the $100,031 of miscellaneous damage. (*Id.* at 40, 42, 45, 48.) Shoemaker did not know exactly how much of the damage was caused by Sloan specifically–it merely sought to "disperse [the costs of damages] fairly among each subcontractor." (*Id.* at 39.)

Sloan asks the Court to determine as a matter of law that it is not responsible for any repair

costs involved in the Project. But because a genuine factual dispute exists as to whether Sloan caused any of the damage that required repairs, summary judgment will be denied on this issue.

### D. Deficiencies

Liberty Mutual argues that $24,600 should be deducted from the amount owing to Sloan based on work deficiencies at the Project. Becht Engineering was hired by either IOC or the homeowner's association to review the project and identify items that it viewed as deficiencies. (Linus Dep. at 50–51.) Becht Engineering prepared a report (the "Becht Report"), a copy of which was given to Shoemaker after it settled its case with IOC. (*Id.* at 51.) Shoemaker examined that report, sought to identify which subcontractor was responsible for the deficient work, and estimated how much it would cost to repair the deficiency. (*Id.*) Shoemaker has not paid to have any of these deficiencies repaired and no homeowner has sued Shoemaker in regard to any of the items identified as deficiencies in the Becht Report. (*Id.* at 53–55.)

Liberty Mutually cannot charge Sloan with such a speculative cost. No money has been expended to correct these deficiencies, nor is there any immediate indication that any money will be expended. Therefore, at this stage of the proceedings, Liberty Mutual is not entitled to a deduction for work deficiencies.

### E. Prejudgment Interest

Sloan seeks prejudgment interest on the $785,067 awarded to it in the Court's August 26, 2009 Order and on any amount awarded to it pursuant to the present motion. "In contract cases, prejudgment interest is awardable as of right. In claims that arise out of a contractual right, interest has been allowed at the legal rate from the date that payment was wrongfully withheld, where the damages are liquidated and certain, and the interest is readily ascertainable through computation."

8

*Daset Mining Corp. v. Indus. Fuels Corp.*, 473 A.2d 584, 595 (Pa. Super. Ct. 1984) (citations omitted). The Pennsylvania Supreme Court looked to § 337(a) of the Restatement (Second) of the Law of Contracts (now § 354), to determine precisely when interest is recoverable. *Penneys v. Pa. R.R. Co.*, 183 A.2d 544, 546 (Pa. 1962). This provision states, in pertinent part, "If the breach [of a contract] consists of a failure to pay a definite sum of money . . . interest is recoverable from the time for performance on the amount due less all deductions to which the party in breach is entitled." RESTATEMENT (SECOND) OF CONTRACTS § 354(1) (1979) (formerly § 337(a)). The fact that the amount of liability is contested does not mean that the amount is not liquidated. *E.C. Ernst, Inc. v. Koppers Co.*, 626 F.2d 324, 332 (3d Cir. 1980) (citing *Oxford Mfg. Co. v. Cliff House Bldg. Corp.*, 307 A.2d 343, 345 (Pa. Super. Ct. 1973)); *W. Republic Mining Co. v. Jones & Laughlins*, 108 Pa. 55, 69 (Pa. 1884) ("A bona fide dispute as to the amount of indebtedness is no bar to the accruing of interest."). Here, Shoemaker's obligation to pay Sloan (which Liberty Mutual assumed pursuant to the Surety Bond) arose from the subcontract and was in a liquidated and certain form. Therefore, Sloan is entitled to prejudgment interest.

Liberty Mutual's arguments to the contrary are unavailing. In its brief, Liberty Mutual contends that prejudgment interest is an equitable remedy awardable only in the court's discretion. However, the cases cited above indicate that if a breach of contract consists of failure to pay a liquidated sum, prejudgment interest is awarded as a matter of right. At oral argument, Liberty Mutual changed tacks and argued that under surety law, a surety is not obligated to pay prejudgment interest unless the bond calls for such, citing *Reliance Universal Inc. v. Ernest Renda Contracting Co.*, 454 A.2d 39 (Pa. Super. Ct. 1982). Liberty Mutual has misread *Reliance Universal*. That case dealt with the issue of whether a surety had to pay service charges called for under a subcontract, not

prejudgment interest. The only mention of interest in the opinion is in the final paragraph, where the Superior Court instructed the trial court to award interest at the statutory rate of 6%. *Id.* at 46. Therefore, this Court will order Liberty Mutual to pay Sloan prejudgment interest.

Interest began to accrue on July 22, 2007. This is because Sloan submitted its claim on June 7, 2007 and the bond gave Liberty Mutual 45 days to pay. (Pl.'s Mot. for Second Partial Summ. J. Ex. F [Demand for Payment]; Surety Bond ¶ 6.) Therefore, 766 days lapsed between the date payment was due and August 25, 2009, when the Court awarded $785,067 to Sloan. Calculating simple interest[1] of 6% using these figures yields interest due in the amount of $98,854. Today, this Court is awarding Sloan $41,179. This means that 866 days has lapsed since payment was due. Simple interest of 6% on these figures is $5,862.

## IV. CONCLUSION

For the foregoing reasons, the Court grants summary judgment to Sloan in the amount of $16,579 on the issue of attorney's fees; $24,600 on the issue of deficiencies; $98,854 on the issue of prejudgment interest for the Court's August 25, 2009 summary judgment award; and $5,862 on the issue of prejudgment interest for today's summary judgment award. An appropriate Order will be docketed separately.

---

[1] Plaintiff's proposed calculation of interest calls for the computation of simple interest, which seems to be called for under the relevant case law. *See Spang & Co. v. USX Corp.*, 599 A.2d 978, 983–84 (Pa. Super. Ct. 1991); *Fernandez v. Levin*, 548 A.2d 1191, 1193 (Pa. 1988).